## JULY TERM, 1843. · · 59

Davis vs. Davis.—Cornelius et al. vs. Grant and Abbott.

## CORNELIUS ET AL. *vs.* GRANT AND ABBOTT.

1. Under the second section of the "act for securing liens to mechanics and others," (R. S. 1835, 108,) the account of the demand of the party, when filed, becomes a part of the record, and stands in place of a declaration.

2. In proceedings under this act to enforce the lien, the defendants cannot give evidence of a special contract by the plaintiffs with other persons, at the same time, and for like work, at a much less price; but the defendants may give evidence of the general and most common price of like work, at the time the contract was entered into, or the work done.

3. A party will not be allowed to urge in the Supreme Court a point that was not made in the Circuit Court.

4. The Circuit Court may permit jurors to take with them, when they retire to consider of their verdict, such papers, given in evidence, as may be useful to them in making up their verdict.

5. Under the second section of the above act, the account of the demand of the plaintiff, filed according to the provisions of this section, is evidence of the lien. The abstract made by the clerk, under the third section, is not primary evidence of the lien, and the omission of the clerk to make this abstract will not effect the lien.

*Cornelius et al. vs. Grant and Abbott.*

APPEAL from Boone Circuit Court.

Todd, *for Appellant.*

To reverse the judgment in this cause, the appellants rely on these points :—

1. That, to establish a lien for the plaintiffs, the clerk's record of such lien is the best evidence, and no secondary evidence can be given, unless the absence of the other is accounted for.

2. That, on an inquiry of general assumpsit, counts for work done, evidence of a special contract by the same workmen, at the same time, and for like work, at a much less price, is competent evidence.

3. There was evidence conducing to show a special agreement between one of the plaintiffs, before the partnership, and Cornelius, to do the work, and that the work was done under it. In law, the plaintiffs could not recover in a joint action, and the court erred in not giving the instruction.

4. That, if there was such contract, the plaintiffs could not recover in the action, without setting forth such contract specially, and suing upon it.

5. That the verdict was given, and judgment rendered, without any evidence to show that any of the defendants, other than Cornelius, were the owners and possessors of the house at the time of suit brought, as alleged in the writ.

6. There is no allegation in the lien filed, of any contract with the owner of the house, for the plaintiffs to furnish materials, and to do the plasterers' work.

7. There is no allegation in the lien filed, of the time when the demand accrued to the plaintiffs, and whether the demand was by special contract, or otherwise.

8. That the written evidence of the lien given in evidence should not have been allowed to the jury, to influence them in their retirement.

9. There is no evidence of any lien of record or on file in the Court.

Robards, *for Appellee.*

It is urged, that the judgment below be affirmed, for the following reasons :—

1. Because there is no material error in the proceedings below. The court below did right in refusing the instruction asked by the defendants, because there was no testimony to justify the instruction.

2. There was no evidence, either admitted to, or excluded from the jury, which could possibly prejudice the appellants in this cause. (See transcript.)

3. The verdict is supported by the testimony given in the cause, and by the law.

4. The court did right in overruling the defendant's (below) motion in arrest. —See Mo. Dig., 1835, p. 468, sec. 7.

Tompkins, *Judge, delivered the opinion of the Court.*

On the 4th day of December, in the year 1841, John Grant and Samuel Abbott

filed, in the office of the clerk of the Circuit Court of Boone county, an account against William Cornelius, for work done on a house, and materials furnished for said Cornelius. The account, consisting of several particulars, amounted to $414 05. Cornelius was credited with $43 28, and at the foot of the account was this statement: "Balance, after allowing all credits and effects, $370 77."

Then followed the affidavit, that the above is a true and just account against William Cornelius, and that the said account has accrued within the six months last past, before the filing of this account; and that the house, upon which the work was done, is situated in the town of Columbia, in the county of Boone, upon lot No. 99 of said town; and the plaintiffs pray that their above account may be held and considered a lien upon such property, &c.

The clerk of the Circuit Court then issued a *scire facias*, stating, that whereas Samuel Abbott and John Grant filed, in the office of the clerk of the Circuit Court of Boone county, an account for work and labor done as plasterers, on a building owned at the time by one William Cornelius, but now owned by one Moses U. Payne et al., &c.

The defendants pleaded *nil debet* and *non-assumpsit*, and, on trial, judgment was given for the plaintiffs, and their damages assessed to $370. The defendants moved for a new trial, assigning for reason—

1. That the court permitted illegal evidence to go to the jury.
2. That the court excluded competent evidence offered by the defendants.
3. That the court refused to give instructions which ought to have been given.
4. That the verdict was against law and evidence.

On the trial of the cause, the plaintiffs offered in evidence the account of their demand above-mentioned to have been filed with the clerk of the Circuit Court. The defendants objected to the reading of it in evidence; the court overruled the objection; and the defendants excepted to the decision.

On the part of the plaintiffs, evidence was given, that they worked as partners on the house of Cornelius, and furnished materials.

A witness stated, that Grant, one of the plaintiffs, in the year 1840, before Abbott came to the country, and before he was a partner, made the contract with Cornelius, to do the plasterer's work to the house; the price of the work he did not know, but he understood from Grant and Cornelius, that Grant was to go on, and do what Cornelius wished him to do, and when Cornelius wished him to stop he was to do so, as part only was to be done that fall. Some work was done before Abbott came to work, but while they were partners, on the inside of the building; some of the inside plastering was done that season, the remaining part in the year 1841. Abbott joined Grant in the work, and they worked together in doing all of the inside plastering; and Cornelius told witness that he preferred Abbott, as being the best workman. The witness saw the work after it was done, and thought it was done as well as work is usually done in this country. Several witnesses stated that the work was done by the plaintiffs, and that Cornelius superintended the work as owner of the house, and that the common price of such work was 37½ cents per yard.

On the part of the defendant, evidence was given to prove the work badly done,

and that the plaintiffs had done a job of the same kind of work for twenty cents per yard.

The court excluded the evidence of the plaintiffs having done work at twenty cents per yard, and the defendants excepted to the opinion in that respect.

The defendants moved the court to give the instruction following:

If the jury believe that the contract for the plastering in controversy was made in the fall, 1840, between Cornelius and the plaintiff, Grant, then the plaintiffs cannot recover in this action, and they will find for the defendants. The plaintiffs objected, and the court refused the instruction, and the defendants excepted.

When the jury were about to retire, the plaintiffs moved the court that the jury be permitted to take out with them the paper writing first above-mentioned, *i. e.,* the account of the demand filed as above-mentioned, to entitle them to a lien on the property. The court permitted it to be done, and the defendants excepted.

The appellants make these points:—

1st: That, to establish a lien for the plaintiffs, the clerk's record of such lien is the best evidence, and no secondary evidence can be given, unless the absence of the other can be accounted for.

2d: That, on an inquiry of general assumpsit, counts for work done, evidence of a special contract by the same workman, at the same time, and for like work, at a much less price, is competent evidence.

3d: That, if there was evidence conducing to show a special agreement between one of the plaintiffs, before the partnership, and Cornelius, to do the work, and that the work was done under it, in law, the plaintiff could not recover in a joint action, and the court erred in not giving the instruction.

4th: That, if there was such contract, the plaintiffs could not recover in the action, without setting forth such contract specially, and suing on it.

5th: That the verdict was given, and judgment entered up, without any evidence to show that any of the defendants, other than Cornelius, were the owners or possessors of the house at the time of the suit brought.

6th: There was no allegation in the bill filed, of any contract with the owner of the house for the plaintiff to furnish materials, and to do the plasterer's work.

7th: There was no allegation in the lien filed, of the time when the demand accrued to the plaintiffs, and whether the demand was by special contract or otherwise.

8th: That the written evidence of the lien given in evidence should not have been allowed to the jury, to influence them in their retirement.

9th: There is no evidence of any lien of record or on file in the court.

*1st Point.*—The second section of the act for securing liens to mechanics and others, is in these words:—

"It shall be the duty of every person who wishes to avail himself of the benefit of this act, to file with the clerk of the Circuit Court of the county in which the building or buildings to be charged with the lien is or are situated, and within six months after such demand shall have accrued, a just and true account of the demand justly due him, after all just credits given, which is to be a lien upon such building or buildings; and to verify the said account by his own, or by the oath

of some other person; and also to file, at the same time, a correct description of the property to be charged with said lien."

In the second section, the clerk is required to make an abstract thereof in a book to be kept for that purpose, containing the name of the person imposing the lien, and of him against whom, or on whose property the same is imposed, the amount of said lien, and the description of the property to be charged. The fourth section gives the right of commencing suit in such case, in the ordinary form; and the sixth section gives the person imposing the lien the choice of proceeding by *scire facias.*

The eighth section directs, that no lien shall bind any building for a longer time than twelve months after such building is finished, unless a suit shall have been brought on such lien in the manner provided by this act. And the fourth section gives to the Court the power of deciding the proportionable part of each party claiming a lien on the property.

The abstract of the account of the demand, required, by the second section, to be filed by the person wishing to avail himself of the benefit of this act, is what, I suppose, the defendant's counsel calls the record of the lien. The object of the abstract appears, from the provisions in the several sections above set out, to be, first, to compel the mechanic to be diligent in the pursuit of his claim, by putting it in the power of others, having a right to a lien, to see his claim set out in the book containing the abstracts ; second, to enable the court to see, at one glance, all the different claims filed, and to decide to what proportionable part each claimant is entitled.

It cannot be contended, that this abstract can impart as full notice to the owners of the house as the account of the demand required by this act to be filed. For what reason the counsel contends that the account of the demand filed in this case is not a record of the court, or on what authority he maintains his position, we are not told. The act, as above shown, gives the plaintiff the right to proceed either in the ordinary form, (as at common law,) or by *scire facias.* In the proceeding by *scire facias,* the account of the demand stands in place of a declaration, and is as much a record as a declaration becomes after filing.

The first point, then, contains nothing, as it appears to me, in favor of the defendants, appellants here.

*Second.* — It is the opinion of the Court, that the defendants ought to have given evidence of the general and most common price of work : the plaintiffs might, for special reason, have been willing to do the work for one man at a much lower price than for another; and even if they had made a bad bargain in doing work at too low a price, for a man whom they did not desire to favor, that is no reason why they should, on such a contract as this, be compelled to work at the same price a second time.

*Third.* — There certainly was evidence conducing to show that a contract was made betwixt Cornelius and one of the plaintiffs to do this work.

One of the witnesses stated, that Grant, one of the plaintiffs, in the year 1840, before Abbott, the other plaintiff, came to the country, and before he was a partner, made the contract with Cornelius to do the work ; but it also appeared, that no

work was done on the house, by either Grant or Abbott, until they were partners. Several witnesses stated that Cornelius was present, and superintended the work, as owner; and one of them stated, that Cornelius said he preferred Abbott, as being the best workman of the two. The jury might then well have found that the work was done under an implied contract between Cornelius, on the one part, and Grant and Abbott, on the other part, believing that the first contract made by, Cornelius and Grant, was abandoned.

*Fourth.*— The fourth point seems to be equally groundless as the third, and for the same reason.

*Fifth.*— On this point it is sufficient to say, that the point was not made before the Circuit Court. In the 31st section of the act to regulate practice in the Supreme Court, it is provided, that "no exception shall be taken, in an appeal or writ of error, except such as shall have been expressly decided in such court."

Had the question been made there, the evidence might, perhaps, have been easily supplied; and the Court would have permitted it to be introduced on terms, that the defendants should not be delayed. In all probability, it was overlooked, because the proof could have been easily made, and the fact was notorious.

*Seventh.*— There was no allegation in the lien filed. The law required the account of the demand to be filed, and the sixth section of the act to secure liens, &c., p. 108, of the Digest of 1835, permits the claimant to proceed by *scire facias.* If the claimant had proceeded under the fourth section, his declaration must have been framed according to the common law rules; but in the mode here pursued, the account of the demand required to be filed was well enough, as it is found in this proceeding.

*Eighth, and Ninth.*— It is a new doctrine, that a jury ought not to be permitted to take out with them the papers given in evidence on the trial of the cause: it might very often be impossible for them, without the aid of the accounts given in evidence, to make up a verdict. As no authority has been produced to sustain this eighth point, I shall here leave it.

As to the ninth point, it is sufficient to refer to the second section of the act, which makes a just and true account of the demand, &c., filed with the clerk, verified by the oath of the plaintiff, evidence of the lien. The clerk's abstract is a thing totally different. He might be guilty of a very gross neglect of duty if he did not make it; but it is idle to suppose that the plaintiffs, after doing all required of them by the law, and all that they could do, should lose their lien by the neglect of the clerk to perform a duty, the object of which, as above shown, is to enable the Court to decide what proportionable part of the property shall be charged with the demand of each person who may entitle himself to a lien on the property, by filing the account of his demand.

The judgment of the Circuit Court is affirmed.